IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FERNANDO DAVID MARTINEZ,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1]                                       Civ. No. 21-1086 KK
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

THIS MATTER is before the Court on Plaintiff Fernando David Martinez's Motion to Reverse and Remand for Rehearing (the "Motion") (Doc. 20), filed March 11, 2022, challenging the determination of the Acting Commissioner of the Social Security Administration ("the Commissioner") that Mr. Martinez is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Commissioner filed a response in opposition on May 11, 2022, and Mr. Martinez filed a reply in support on May 24, 2022. (Docs. 21, 22.) Having meticulously reviewed the entire record and the relevant law, and being otherwise sufficiently advised, the Court finds that Mr. Martinez's Motion is well-taken and should be GRANTED.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 17.)

## I. BACKGROUND

### A. Procedural History

Now 23 years old, Mr. Martinez qualified for special education classes in high school due to autism. (AR[3] 410, 473.) He graduated from high school in 2017 but has never been employed. (AR 38, 409, 481.) In January 2020, he applied for supplemental security income, alleging that he is unable to work because he has autism. (AR36, 382–88; Doc. 20 at 3.) Mr. Martinez's application was denied initially on February 18, 2020, and upon reconsideration on April 1, 2020. (AR 36.) At a hearing on March 18, 2021, ALJ Michael Leppala heard testimony by Mr. Martinez, who was not represented by counsel, and a vocational expert, Mary D. Weber, as well as Mr. Martinez's mother. (AR 36, 53–76; Doc. 20 at 3.) The ALJ entered an unfavorable decision on April 14, 2021, finding that Mr. Martinez was not disabled under the relevant sections of the Social Security Act. (AR 36–49; Doc. 20 at 3.) The Appeals Council denied Mr. Martinez's request for review, and Mr. Martinez, now represented by counsel, filed the instant appeal on November 10, 2021. (AR 1-4; Doc. 1.)

### B. Medical Opinions and Prior Administrative Medical Findings Related to Mr. Martinez's Mental Limitations

#### 1. *Consultative Examiner Dr. Eligio R. Padilla*

Dr. Eligio Padilla performed a consultative psychological evaluation of Mr. Martinez at the request of Disability Determination Services on February 12, 2020. (AR 480–86.) Dr. Padilla interviewed Mr. Martinez and his mother, conducted a mental status examination, administered the Wechsler Adult Intelligence Scale ("WAIS-IV"), and reviewed "part of" Mr. Martinez's Individualized Education Program ("IEP"). (AR 480.)

---

[3] Citations to "AR" are to the Certified Transcript of the Administrative Record filed on January 7, 2022. (Doc. 10.)

Dr. Padilla noted that Mr. Martinez "did not begin to talk until he was four-years-old" and that, due to his autism, Mr. Martinez qualified for special education services. (AR 480.) Mr. Martinez's IEP indicated "issues using social/pragmatic skills appropriately" as well as "severe language disorder affecting listening comprehension and oral language modalities similarly." (AR 481.)

Dr. Padilla administered the Mini-Mental Status Exam to screen for cognitive dysfunction. (AR 481–82.) Mr. Martinez scored 25 out of 30, which Dr. Padilla found consistent with mild cognitive impairment. (AR 481.) Dr. Padilla further noted that Mr. Martinez's attention and concentration abilities were "mildly impaired, missing two of five items in 'serial sevens,'" that Mr. Martinez was "mildly disoriented" about the location of the exam and the situation, and that he described Dr. Padilla's office as "a lobby." (AR 482.) Noting that Mr. Martinez "miss[ed] one of three words in 'recall;' fail[ed] to repeat a short sentence word for word; and struggle[d] with educational history," Dr. Padilla found that Mr. Martinez's memory was also mildly impaired. (AR 482.)

On the WAIS-IV, Mr. Martinez produced a full-scale IQ score of 78. (AR 484.) Dr. Padilla stated that Mr. Martinez was "functioning cognitively in the borderline range of intellectual functioning" and that "[h]is overall thinking and reasoning abilities exceed those of only approximately 7% of individuals his age[.]" (*Id.*) Dr. Padilla stated that Mr. Martinez "is likely to experience difficulty keeping up with his peers in a wide variety of situations that require thinking and reasoning abilities." (*Id.*)

Dr. Padilla also tested Mr. Martinez's verbal comprehension, perceptual reasoning, working memory, and processing speed. (AR 484–85.) He found Mr. Martinez's "verbal reasoning abilities . . . are in the borderline range and above those of only 7% of his peers." (AR 484.) Mr.

Martinez scored in the "low average range" as to "nonverbal reasoning abilities" and his abilities to "sustain attention, concentrate, and exert mental control" and to process "simple or routine visual material without making errors." (AR 485.)

Dr. Padilla diagnosed Mr. Martinez with "autistic disorder," unspecified communication disorder, and borderline intellectual functioning. (AR 485.) He observed that Mr. Martinez "will likely need some level of supervision throughout his life" and concluded, "it is the professional opinion of this examiner that [Mr. Martinez] cannot manage benefits in his best interests because of his very low level of cognitive functioning, his autism, and his communication disorder." (AR 485.) Dr. Padilla further found Mr. Martinez mildly impaired in his ability to understand and remember basic instructions, but moderately impaired in his abilities to "understand and remember more complex, multistep instructions [and] concentrate and persist at tasks of basic work." (AR 485.) Finally, he found Mr. Martinez markedly impaired in his abilities to interact with the general public, coworkers and supervisors and to adapt to changes in the workplace. (AR 485.)

2. *Non-Examining Agency Consultants Drs. Richard Sorensen, Renate Wewerka, and Carol Mohney*

At the initial level, non-examining consultant Dr. Richard Sorensen completed the Mental Residual Functional Capacity Assessment ("MRFCA") on February 18, 2020. (AR 317–19.) He found Mr. Martinez's ability to interact appropriately with the general public "markedly" limited. (AR 319.) He also found that Mr. Martinez is "moderately limited" in his abilities to

- understand and remember detailed instructions.
- carry out detailed instructions,
- maintain attention and concentration for extended periods,
- work in coordination with or in proximity to others without being distracted by them,
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods,
- accept instructions and respond appropriately to criticism from supervisors,

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes,
- respond appropriately to changes in the work setting,
- travel in unfamiliar places or use public transportation, and
- set realistic goals or make plans independently of others.

(AR 318-19). In the narrative sections associated with these ratings, Dr. Sorensen referred to the Psychiatric Review Technique ("PRT") form, which he also completed on February 18, 2020. (*See, e.g.*, AR 319, 315–16.) On the PRT, Dr. Sorensen opined that, "[w]hile [Mr. Martinez] has some cognitive and social limitations, [Dr. Padilla's] opinion of marked limitations is not supported[.] [Mr. Martinez] appears capable of unskilled work in a setting requiring minimal social interaction[.]" (AR 316.) In addition, in the section of the MRFCA titled "MRFC - Additional Explanation," Dr. Sorensen wrote that Mr. Martinez can "understand, remember[,] and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." (AR 319.)

Upon reconsideration, non-examining consultant Dr. Renate Wewerka found the same moderate and marked limitations. (AR 327–31.) Like Dr. Sorensen, she referred to the PRT form for explanation of those limitations. (*Id.*) On the PRT form, she indicated that Mr. Martinez "appears capable of unskilled work in a setting requiring minimal social interaction[.]" (AR 327.) She also opined on the MRFCA form that Mr. Martinez can "understand, remember[,] and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, and respond appropriately to changes in a routine work setting." (AR 329–31.) As to social interactions, she added, "Optimal work performance will likely occur in a setting with incidental interpersonal interaction[.]" (AR 331.)

Non-examining consultant Dr. Carol Mohney agreed with Dr. Wewerka's MRFCA findings as to the categories of understanding and memory, sustained concentration and persistence, and adaptation. (AR 490–91.) However, she found Dr. Wewerka's narrative incomplete or inadequate as it related to Mr. Martinez's social interaction skills. (AR 491.) She opined that Mr. Martinez "has the ability to establish and maintain appropriate interactions and relationships with routine interaction w[ith] peers and supervisors but cannot sustain more than superficial general public interaction." (*Id*.)

In determining Mr. Martinez's residual functional capacity ("RFC"), the ALJ found the opinions of the non-examining consultants Drs. Sorensen, Wewerka, and Mohney persuasive because they are "supported by and consistent with the available evidence."[4] (AR 46.) In contrast, he found examining consultant Dr. Padilla's opinions that Mr. Martinez has marked limitations in his ability to interact with coworkers and supervisors and to adapt to changes in work setting "only somewhat persuasive" based on his finding that those opinions are only partially supported and not consistent with the evidence. (AR 47.)

## C. The Unfavorable Decision

Applying the Commissioner's five-step sequential evaluation process to determine whether Mr. Martinez is disabled,[5] the ALJ found at step one that Mr. Martinez has not engaged in

---

[4] Because Mr. Martinez filed his claims in January 2020, the ALJ's evaluation of medical opinions and prior administrative medical findings is governed by 20 C.F.R. § 416.920c (governing evaluation of medical opinions and prior administrative medical findings in cases filed after March 27, 2017) ("the 2017 Regulations"). Under the 2017 Regulations, the persuasiveness of a medical source's opinions depends on the following factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. Jul. 6, 2021), *cert. denied*, — U.S. —, 142 S. Ct. 2838 (Jun. 21, 2022) (quoting, *inter alia*, 20 C.F.R. § 416.920c(c)). Of these factors, supportability and consistency are the most important. *Id*. at *6 (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a))

[5] The five-step sequential evaluation process requires the ALJ to determine whether:

(1)  the claimant engaged in substantial gainful activity during the alleged period of disability;

6

substantial gainful activity since January 23, 2020, the application date. (AR 38.) At step two, the ALJ found that Mr. Martinez suffers from severe, medically determinable impairments of autism spectrum disorder, speech/language impairment, and borderline intellectual functioning disorder. (AR 38)

At step three, the ALJ determined that Mr. Martinez's impairments or combination of impairments does not meet or medically equal the severity of one of the listed impairments described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (AR 39); 20 C.F.R. § 416.920(a)(4)(iii).

At step four,[6] the ALJ found that Mr. Martinez has no past relevant work. (AR 47.) He also found that Mr. Martinez has the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Mr. Martinez] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, co[ ]workers, and work situations, deal with routine changes in work setting, [and] maintain concentration[,] persistence[] and pace for up to and including two hours at a time with normal breaks throughout a normal workday. [Mr. Martinez] is limited to simple, routine, and repetitive tasks and routine interactions [] with coworkers and supervisors and no more than superficial interaction with the general public.

---

(2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3) any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to his past relevant work; and, if not,
(5) the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. § 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

[6] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. § 416.920(f).

(AR 43.)  The ALJ concluded that with this RFC, Mr. Martinez is "capable of doing a range of unskilled work on a sustained and consistent basis despite the limitations arising from his impairments."  (AR 47.)

The ALJ proceeded to step five of the analysis and found that, based on his age, education, work experience, and RFC, Mr. Martinez can adjust to jobs that exist in significant numbers in the national economy, such as dining room attendant, industrial cleaner, and dishwasher. (AR 48.) The ALJ concluded that, because Mr. Martinez can perform these occupations despite his limitations, he is not disabled under the Social Security Act. (*Id.*) The Court provides further background as it is relevant to the issues discussed below.

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted) or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks, brackets, and citation omitted omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. Discussion

Mr. Martinez argues that the ALJ erred at step four by failing to assess inconsistencies in the opinions of non-examining consultants Drs. Sorensen and Wewerka (collectively, the "Agency Consultants"), and by failing to incorporate into the RFC, or explain why he rejected, three of the moderate limitations that they found, despite finding their opinions persuasive. (Docs. 20 at 11–16; 22 at 2–6). Mr. Martinez also argues that the ALJ erred in his assessment of Dr. Padilla's opinions. (Docs. 20 at 16-23; 22 at 6–9.) The Commissioner disputes these arguments. (*See*

9

*generally* Doc. 29.) The Court finds that the ALJ erred in assessing Mr. Martinez's RFC by failing to account for his impaired ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Because this error requires reversal, the Court will not address Mr. Martinez's remaining claims of error, as they may be affected on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The Agency Consultants completed their evaluations using the electronic Claims Analysis Tool ("eCAT"). (AR 317–19, 329–31.) The eCAT MRFCA[7] requires the consultant to "rate" the claimant's limitations regarding four distinct categories of mental functional limitations: understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and adaptation limitations. (AR 317–319, 329–31.) The rating questions "help determine the individual's ability to perform sustained work activities." (AR 317, 329.) The consultant is then required to record "the actual mental residual functional capacity assessment" in narrative form in text boxes following each category of limitation, and to record "[a]ny other assessment information deemed appropriate" in the last section of the MRFCA.[8] (AR 317, 329.)

---

[7] The SSA-4734-F4-SUP form used to record the MRFCA is divided into named sections. *Vienna v. Saul*, No. 18-cv-783, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). Although the eCAT MRFCA is not divided into named sections, courts have found that Section I of the SSA-4734-F4-SUP is analogous to the worksheet "rating" portions of the eCAT MRFCA, and Section III is analogous to the narrative portions. *See, e.g., id.* ("Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'"); *Kim L.P. v. Saul*, No. 18-cv-552, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020) (discussing the SSA-4734-F4-UP form and the eCAT MRFCA). Thus, what is referred to as the "Section III" narrative in case law corresponds to the narratives associated with each of the four categories and/or the narrative provided in the "additional explanation" box. *See id.* (stating, "*all* narrative responses [on the eCAT MRFCA] are part of a whole and form the completing psychologist's findings regarding the claimant's functional capacity").

[8] The MRFCA instructions state:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative

10

Thus, the required narrative sections, not the ratings sections, state the consultant's assessment of the mental residual function capacity. *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (stating that "Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and . . . adjudicators are to use the Section III narrative as the RFC assessment[.]").

However, even when the consultant provides a narrative RFC assessment, "an ALJ can [not] turn a blind eye" to moderate limitations found in Section I of the form. *Id*. This is because "[a]t the ALJ-stage (and thereafter) the entire MRFCA form—all of the findings on the MRFCA form—is considered the doctor's 'opinion.'" *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016); *see Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *6 (D.N.M. Oct. 19, 2020) (stating that the findings on the PRT and MRFCA "constitute medical evidence . . . and must be considered as such by the ALJ"); 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Because the consultant's opinion is reflected in the entire form, "[a]n ALJ may rely exclusively on the Section III findings only if the 'Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC.'" *Bosse v. Saul*, No. 2:18-CV-00475-LF, 2019 WL 3986046, at *4 (D.N.M. Aug. 23, 2019) (unpublished)

---

discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation box.

(AR 317, 329.)

11

(quoting *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015)). If a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations [noted by the consultant] would have on the claimant's ability, or if it contradicts limitations [so noted], the [narrative] MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (quoting *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)).

A one-for-one correspondence between an RFC and a medical opinion is not required. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). In some instances, "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). However, the Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's *mental* limitations." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) (emphasis added) (citing *Chapo*, 682 F.3d at 1290 n.3). Instead, an ALJ must assess each claimant's mental limitations individually. *See Spencer v. Kijakazi*, No. 20-CV-00786-NYW, 2021 WL 4133920, at *5 (D. Colo. Sept. 10, 2021) (noting that a case-by-case analysis of the claimant's limitations is required); *cf. Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."). "Unless the connection (between the limitation and the work) is obvious, . . . [the ALJ] must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker*, 772 F. App'x at 616.

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at

1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Rather, if an ALJ rejects a portion of a medical opinion, he must explain why. *Parker*, 772 F. App'x at 617 (stating that where there is a "discrepancy between the agency's assessment of mental capacity and the medical opinions, the agency ha[s] an obligation to provide an explanation"); *see* SSR 96-8p, 1996 WL 374184, at *7 (1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Mr. Martinez argues that the non-examining Agency Consultants' narrative assessments were not substantial evidence for the RFC because they failed to address therein how Mr. Martinez's residual functional capacity is affected by a number of assessed moderate limitations in his abilities, including his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 20 at 11–13.) He further argues that the ALJ erred by failing to explain how he incorporated these limitations into the RFC or why he rejected those opinions despite finding the non-examining Agency Consultants' opinions persuasive. (*Id.* at 14–15.) To the extent that Mr. Martinez argues that the ALJ committed reversible error by failing to explain how he incorporated into the RFC the opined moderate limitation in his ability to complete a normal workday and workweek without interruptions, the Court agrees.[9]

Although the Agency Consultants indicated in Section I of the MRFCA that Mr. Martinez is moderately limited in his ability to "complete a normal workday and workweek without

---

[9] Mr. Martinez also argues that the Agency Consultants' MRFCA narrative "explanations do not account for or describe the effect of the moderate limitations [they assessed] in attention and concentration[] . . . and in responding appropriately to changes." (Doc. 20 at 11.) The Court need not reach these less-straightforward issues, however, where reversal is warranted on the basis discussed herein.

13

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," they failed to "describe in detail" his mental capacities and limitations in a comprehensive expression of Mr. Martinez's mental RFC or to discuss the effects of these impairments on function. (*See* AR 319, 331.)

The Agency Consultants both opined that "[w]hile [Mr. Martinez] has some cognitive and social limitations, . . . [h]e appears capable of unskilled work in a setting requiring minimal social interaction." (AR 316, 327.) But the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms is "critical for performing unskilled work." Program Operations Manual System ("POMS") DI § 25020.010(B(3)(i). SSA policies are clear that if a claimant is to perform unskilled work, the requirement that he be able to complete a normal workday and workweek without interruptions from his psychologically based symptoms and to perform at a consistent pace on a normal break schedule is "usually strict." *See id*. Indeed, judges in this District have suggested that a moderate limitation in this area of functioning "would likely interfere with work in almost any setting." *See e.g.*, *Bosse*, 2019 WL 3986046, at *8-9 (citing Chapo, 682 F.3d at 1290). Thus, the finding of a moderate limitation in that ability conflicts with the assessment that Mr. Martinez can perform unskilled work. Because the Agency Consultants' opinions in their Section III narrative assessments conflict with their findings in Section I of the MRFCA, the narrative assessments "cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Bosse*, 2019 WL 3986046, at *4.

The Commissioner argues that "the mere fact that those doctors did not explain a reconciliation of their [Section I findings] and [narrative] findings does not mean remand is automatically required" and that the "RFC finding will be upheld if it "reflect[s] the moderate limitations identified by [the Agency Consultants] in Section I of the MRFCA." (Doc. 21 at 13

(quoting *Lee*, 631 F. App'x at 542 (first alteration in original).) But the RFC here does not meet this standard.  That is, the Court finds no obvious connection between the ALJ's mental RFC limitations (i.e., to simple, routine, and repetitive tasks) and the moderate limitation, per the Agency Consultants, in Mr. Martinez's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See Edgell v. Kijakazi*, No. Civ. 21-269 KK, 2022 WL 1987846, at *7 (D.N.M. June 6, 2022). The ALJ did not explicitly address this opined moderate limitation in the RFC, nor did he specify what, if any limitations, he included in the RFC to account for the limitation. For the same reasons discussed above, this limitation is not addressed by restricting the RFC to unskilled work. *See Peterson v. Saul*, 19-cv-486 JHR, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (unpublished) (restriction to simple, routine tasks did not account for a moderate limitation in ability to complete normal workday and workweek without interruptions); *Vienna*, 2019 WL 4686718, at *6 (holding that mental limitations essential to unskilled work—including ability to complete a workday and workweek—were not addressed by an RFC for unskilled work); *Cordova v. Berryhill*, No. 17-CV-0611 SMV, 2018 WL 2138647 at *8–9 (D.N.M. May 9, 2018) (unpublished) (holding that limiting the claimant to "simple, routine (or unskilled) work . . . does not account for moderate limitations in her ability to [] complete a normal workday and workweek without interruptions").

      Because "a moderate impairment is not the same as no impairment at all[,]" *Haga*, 482 F.3d at 1208, the ALJ erred by not addressing the opined moderate limitation in Mr. Martinez's ability to complete a workday and workweek without interruptions. *Spencer,* 2021 WL 4133920, at *5 ("[A]n ALJ generally must account for moderate limitations '*with precision* in the ultimate determination of the claimant's residual functional capacity,' and must express the claimant's

15

moderate impairments in mental functioning 'in terms of work-related functions' or 'work-related activities.'" (quoting *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016))). If the ALJ rejected this moderate limitation despite having found the Agency Consultants' opinions persuasive, he was obligated to explain why. *Parker*, 772 F. App'x at 615 ("If the agency had decided to omit particular limitations embodied in the two medical opinions, the agency needed to explain the omissions."). Because he neither addressed the limitation in the RFC nor explained why he rejected it, remand is warranted. *See Estrada v. Kijakazi,* No. CV 21-0653 KRS, 2022 WL 4289936, at *9 (D.N.M. Sept. 16, 2022) (remanding for rehearing where, "despite describing the state agency consultants' findings as 'persuasive,' the ALJ did not directly address [their] assessed moderate limitation in [the claimant]'s ability to complete a normal workday and workweek without interruptions from psychologically based symptoms").

## IV. CONCLUSION

The ALJ erred by failing to incorporate into the RFC, or explain why he rejected, opined moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, which is essential to performing unskilled work. Hence, there is not a "sufficient basis to determine that appropriate legal principles have been followed[, which] is grounds for reversal." *Jensen*, 436 F.3d at 1165.

IT IS THEREFORE ORDERED that Mr. Martinez's Motion to Reverse and Remand for Rehearing (Doc. 20) is GRANTED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE